FOURNET, Chief Justice.
 

 This is a suit to cancel an oil, gas and mineral lease executed by the landowner-plaintiffs
 
 [1]
 
 and now held by the defendant, Hassie Hunt Trust,
 
 [2]
 
 affecting a total area estimated at 922.10 acres, composed of various non-contiguous tracts of land situated in Vermilion Parish,
 
 [3]
 
 on the ground that defendant had failed to properly and prudently develop same; and this appeal is from a
 
 *477
 
 judgment ordering the cancellation and awarding attorney’s fees of $5,000.
 

 The undisputed facts in the record show that the lease was granted by the plaintiffs on November 11, 1943, for a primary term of five years, a recited consideration of $4,610.50 and certain royalties, to Stanolind Oil & Gas Company. Just prior to expiration of the primary term a well was commenced on one of the tracts, was known as the Broussard No. 1 well, and was completed as a producing well approximately five months later. Meanwhile, by an instrument dated February 16, 1949, Stanolind Oil & Gas Company conveyed to John W. Mecom the said mineral lease along with a number of others, “without warranty of title, either express or implied,” reserving and excepting an overriding royalty of Yioth of %ths of the oil, distillate and gas produced and saved from wells on the lands covered by the various leases. Mecom, for his part, bound himself to “keep and perform all of the terms, provisions and express or implied covenants” contained in the leases, to make prompt payment of overriding royalties to the lessors therein, 'as well as to reasonably develop the leased premises; to furnish Stanolind with authentic itemized monthly reports of production, to allow it access to wells and to furnish data thereon as requested; and, in event of his (Mecom’s) election to surrender or release the premises, “to notify the Assignor 30 days in advance” and “to reastsign, * * * if- request for such reassignment is made” within the period. The same leases, including that covering plaintiffs’ lands, were transferred to the defendant by instrument dated March 1, 1949, with a reservation by Mecom of an overriding royalty, in addition to royalties already reserved, equal to %2nd of the oil, gas and other minerals produced and saved from the leased lands. That instrument likewise contained stipulations with respect to furnishing of samples and cores as well as data on wells drilled, and for “reassignment” of any and all leases in event of their contemplated surrender.
 
 [4]
 

 Following completion of Broussard No. 1 well on Mdrch 25, 1949, Broussard No. 2 well was commenced by defendant on land covered by the subject lease, but was plugged and abandoned as a dry hole on November 14, 1949. Broussard No. 1 continued to produce oil until September of 1951, when it was shut-in because of its reclassification as a gas well. After delays due to the construction of a pipeline for the transmission of gas to .a purchaser, the sale of gas from that well was commenced
 
 *479
 
 and continued until difficulties at the well were encountered in March, 1953; in June of that year the well was re-completed as an oil well, from which production was thereafter obtained at its allowable rate.
 

 On August 6, 1953, plaintiffs’ attorney addressed a letter to defendant requesting development of tracts contiguous to the producing well, suggesting a release of all other (non-contiguous) tracts, as to which a new lease was tentatively proposed, and threatening immediate action for cancellation of the lease upon failure to meet those demands. Negotiations looking to a new lease having come to naught, on October 6, 1953, the plaintiffs advised the defendant that the lease had expired and requested cancellation within ten days, as provided by LSA-R.S. 30:102.
 
 [5]
 
 This suit followed on October 22, 1953.
 

 Exceptions of no right and no cause of action filed by the defendant were overruled by the court below. Trial on the merits was had and the Judge in his written reasons, after summarizing the production and development history of plaintiffs’ acreage under the subject lease, found, in effect; that what had been done fell short of diligent and reasonable development. In rendering judgment in favor of plaintiffs and against the defendant, Hassie Hunt Trust,-he decreed
 
 “that the said sublease be, and the same is, hereby cancelled,”
 
 except for an area of 40 acres around Broussard No. 1 well — conformably to a stipulation in the original lease. (Emphasis ours.)
 

 On this appeal, defendant-appellant is re-urging the exceptions of no right and no cause of action. It is contended that since there is neither privity of estate nor of contract between a lessor and a sublessee, plaintiff’s petition discloses no right of action against this defendant, a sublessee, upon any covenant contained in the lease; and that plaintiff’s petition discloses no cause of action because of the complete absence of well pleaded facts which, if taken as true, would show a breach of any obligation of the lease.
 

 Counsel for plaintiffs, in support of their asserted right of action against this defendant, contend that by the terms of the original lease-contract the parties expressly relieved Stanolind Oil & Gas Co. of any obligations or responsibilities under the lease once it was transferred,
 
 [6]
 
 and intended that the landowners could look only to the operators for relief of any express or implied covenant of the lease. The clause relied on provides: “In case Lessee assigns
 
 *481
 
 this lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment, except as to payment of the minimum rental above provided.” It is argued that with this “interdiction” there could be no valid sublease as against the landowners, even though as between themselves the parties may have created the status of sub-lessor and sub-lessee with obligations enforceable between them; and that in view of the fact that first Stanolind, and then Mecom, transferred without warranty of title and specifically bound the transferee to take on and comply with obligations to the landowners under the terms of the original lease, the defendant herein is the only one to whom plaintiffs can look for relief.
 

 An assignment has been differentiated from a sublease by this Court on many occasions, the distinction being that “ * * * in an assignment the original lessee transfers all of his rights in the lease; whereas in a sublease he retains some control or interest in it.” Bond v. Midstates Oil Corp., 219 La. 415, 428, 53 So.2d 149, 153. We also said there, following an analysis of the jurisprudence, that “It would seem therefore, that regardless of any other rights which the lessee may retain or reserve, whether it be a right to control the forfeiture or the preservation of the lease, or the right of reversion, if there is the retention and reservation of an overriding, or excess royalty, that is sufficient of itself to stamp the transfer as a sublease.” 219 La. at page 431, 53 So.2d at page 154. See, also, Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; and J. F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179, 45 A.L.R.2d 1026.
 

 It is therefore clear that in the instant case the transfers from Stanolind Oil & Gas Company to Mecom, and from Mecom to the defendant, though denominated assignments, were, in legal effect, subleases, since overriding royalties as well as various other controls were reserved by the transferor in each instrument. It follows that the argument made on behalf of the plaintiffs with respect to the clause beginning “In case Lessee assigns this lease” is based on a false premise and is not applicable here; further, that the plaintiffs have no right of action against this defendant, because “ * * * while an assignee is liable to the original lessor for all the obligations of the lessee by virtue of the privity of estate that subsists between them, no action can be maintained by the lessor against the undertenant, upon any covenant contained in the lease, since there is neither privity of estate nor of contract between himself and the undertenant.” Smith v. Sun Oil Co., quoting from Taylor, Landlord and Tenant (9th Ed.) Sec. 16; 165 La. 907, at page 913, 116 So. 379, at page 381. To the same effect, Audubon
 
 *483
 
 Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33.
 

 In view of our conclusion, it is unnecessary to discuss plaintiffs’ position with respect to the exception of no cause of áction.
 

 For the reasons assigned the judgment 'appealed from is annulled; set aside and reversed, and it is now ordered, adjudged and decreed that the exception of no right of action be, and the same is maintained arid the suit of plaintiffs is hereby dismissed at their costs.
 

 HAWTHORNE, J., absent.
 

 [1]
 

 . These are J. Sulie Broussard, Mary Lou Broussard Noel, James Bay Broussard, Azalie Broussard Boudreaux, George J. Broussard, Amos Broussard, Marie Lee Broussard Belaire, and Camille Broussard Dufour.
 

 [2]
 

 . A trust organized and existing under the laws of the State of Texas, with Roy Lee as its Trustee.
 

 [3]
 

 .The land lies in Sections 30 and 31, T. 13 S., R. 1E.; Section 36, T. 13 S., R. 1 W.; Section 1, T. 14 S., R. 1 W.; and Section 6, T. 14 S., R. 1 E., and is described as 15 separate tracts.
 

 [4]
 

 . It appears that Broussard Well No. 1 was actualy drilled by Hassie Hunt Trust. According to a stipulation found in the .record, the transfers from Stanolind Oil & Gas. Go. to Mecom and from Mecom to defendant were orally agreed to prior to the commencement of the well on November 1, . 1948; the instruments described in the opinion were the formal written transfers.
 

 [5]
 

 . A statute dealing with cancellation of leases upon certain eventualities and requiring lessee, within ten days of written demand, to furnish lessor with an acknowledged instrument directing cancellation of the lease on the records— failing in which the lessee is made liable for attorney’s fees and damages due to non-cancellation.
 

 [6]
 

 . Except the obligation to pay delay rentals; and the primary term having expired when Stanolind conveyed to Mecom, delay rentals were no longer due.