643 So.2d 1271 (1994)
PINE TREE ASSOCIATES
v.
SUBWAY RESTAURANTS, INC., Ralph O. Buras, Sylvia L. Buras, Stephen P. Guccione, Todd W. Eppley, William L. White, Olga T. White, Robert L. Ebberman, Jr., and Gerald J. Martinez.
No. 93-CA-603.
Court of Appeal of Louisiana, Fifth Circuit.
September 14, 1994.
*1272 James E. Moorman, III, Muller & Pastuszek, Mandeville, for plaintiff-appellant.
Daniel K. Rester, Hofman, Suterfield, Ensenat & Bankston, Baton Rouge, for defendants-appellees.
Before GAUDIN and GRISBAUM, JJ., and JOHN C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
This appeal concerns a dismissal of plaintiff-appellant's Rule to Traverse Garnishment Interrogatories. Appellant, Pine Tree Associates is judgment creditor to defendant, Subway Restaurants, Inc. Pine Tree obtained a judgment against Subway Restaurants, Inc. ("SRI"/Debtor) on July 13, 1990, for breach of a lease agreement. On July 28, 1992, appellant filed a request for writ of fieri facias ordering the seizure of SRI/Debtor's property to satisfy Pine Tree's judgment. Appellant filed a second supplemental petition naming Appellees[1] (Subway Franchisees) as garnishees, on December 31, 1992. Appellees answered garnishment interrogatories denying that they held any of SRI/Debtor's property. On February 18, 1992, appellant filed the rule to traverse the answers to the garnishment interrogatories. Hearing was held and memoranda submitted on March 31, 1993. On May 5, 1993, the trial court dismissed the appellant's rule to traverse, finding that appellees did not hold any property of SRI/Debtor. Consequently, the answers of appellees were not set aside, *1273 and Pine Tree thereafter perfected this appeal.
On appeal, appellant argues that the trial court erred in finding that appellees do not hold property belonging to SRI/Debtor that is subject to the garnishment. Specifically, they argue that since appellees as franchisees and sublessees are liable for (and are currently paying) SRI/Debtor's obligations to the landlords in the eight master leases, these lease payments are SRI/Debtor's property and therefore subject to garnishment.
Appellees argue that under the various assignments of lease and subleases, the lease payments are due directly to the landlords and, hence, were never or ceased to be property of SRI/Debtor and are not subject to garnishment.
For the following reasons, we affirm the judgment of the trial court.
Proper resolution of this case mandates our setting forth, in detail, the complete scenario of all eight lease arrangements.
Garnishees Stephen P. Guccione and Todd N. Eppley hold two Subway franchises. The first location is at 601 Terry Parkway. On December 12, 1989, Towne Center, Ltd. (Landlord), entered into a "master" lease with SRI/Debtor, (Tenant) (Ex. E-1). On December 14, 1989, SRI/Debtor assigned this lease to Subway Real Estate Corporation. (Ex. E-2). On March 19, 1991, Subway Real Estate Corporation (SREC) entered into a sublease with Guccione and Eppley.
Their second location is in the Barataria Bazaar Shopping Center. On May 4, 1990, Bok Corporation (Landlord) entered into a lease with SREC (Tenant) (Ex. F-1). On October 18, 1990 SREC subleased the location to Guccione and Eppley (Ex. F-2). On October 26, 1990, SREC assigned its lease with Bok Corporation to Subway South, Inc. (Ex. F-3). SRI/Debtor is not a party to the leases/assignments at this location.
Garnishee Gerald J. Martinez holds the Subway franchise at the Old Metairie Village. On February 25, 1987, Old Metairie Village Ltd. Partnership (Landlord) entered into a lease with SRI/Debtor (Tenant) (Ex. G-1). On August 5, 1988, SRI/Debtor assigned this lease to Subway South, Inc. (Ex. G-2). On August 24, 1988, Subway South, Inc. entered into a sublease with Martinez (G-3).
Garnishees William L. and Olga T. White (the Whites) held three Subway franchise locations. The first location is in the Pavilion at Esplanade. On November 30, 1988, the Pavilion at Esplanade (Landlord) granted a lease to SRI/Debtor (Tenant) (Ex. H-1). On January 20, 1989, SRI/Debtor entered into a sublease with the Whites (Ex. H-2). On January 25, 1989, SRI/Debtor assigned the primary lease with Landlord to Subway South, Inc. (Ex. H-3).
The Whites' second location is at the Clearview Palms Shopping Center. On June 20, 1988, Clearview Palms Partnership (Landlord) leased the premises to SRI/Debtor (Ex. I-1). On September 6, 1988, SRI/Debtor entered into a sublease with the Whites (Ex-I-2). On October 13, 1988, SRI/Debtor assigned its interest in the master lease (Ex. I-1) to Subway South, Inc. (Ex. I-3).
The Whites' third Subway location begins with the May 9, 1990 master lease between Westowne Associates (landlord) and SREC (Tenant) (Ex. J-1). On September 27, 1990, SREC subleased the premises to the Whites (Ex. J-2). On October 3, 1990, SREC assigned the master lease to Subway South, Inc.[2] (Ex. J-3).
The next group of garnishees is Ralph O. and Sylvia L. Buras (Buras). On April 20, 1987, Elmwood Village Center (Landlord) executed a master lease with SRI/Debtor (Tenant) (Ex. K-1). On May 22, 1987, SRI/Debtor subleased the premises to Buras (Ex. K-2). Unlike the other premises, there appears to be no assignment of the lease at this location.
The last garnishee is Robert L. Ebberman, Jr. On March 5, 1987, Cella Properties (Landlord) executed a master lease with SRI/Debtor (Tenant) (Ex. L-1). On November 11, 1988, SRI/Debtor assigned its interest in the master lease to Subway South, Inc. (Ex. L-2). On November 30, 1988, Subway *1274 South, Inc. leased the premises to Ebberman.
Of the eight Subway franchises' histories detailed above, two do not involve SRI/Debtor as a party to a lease, sublease, or assignment of lease. The first location is Guccione and Eppley's Barataria Bazaar franchise. The other location is the Whites' third franchise, at Westowne Associates (Exhibits J). Because SRI/Debtor is not a party to any contract in these instances, we find that as to these locations the judgment creditor Pine Tree has no rights against the garnishees for these monthly rental payments as no money is conceivably owed to SRI/Debtor here, and affirm the trial court's judgment as to these locations.
Of the remaining six locations, in five lease situations (all but garnishee Buras, Exhibits K), SRI/Debtor assigned its interest in the respective master leases to third parties. In Guccione and Eppley's Terry Parkway location, SRI/Debtor assigned the lease to SREC in 1988. In garnishee Whites' first location, SRI/Debtor assigned its interest in the master lease to Subway South, Inc., in 1989. In garnishee Martinez's case, SRI/Debtor assigned its interest in the master lease to Subway South, Inc. in 1989. At the Whites' second location (Clearview Palms), SRI/Debtor also assigned its interest in the master lease to Subway South, Inc., in 1988. And finally, garnishee Ebberman's sublease is with Subway South, Inc., to whom SRI/Debtor assigned the master lease in 1988.
Pine Tree argues that because SRI/Debtor was able (i.e., had the power) to direct to whom the franchisees paid the monthly rentals, this fact proves that the "funds" were really SRI/Debtor's and therefore the monthly payments are SRI/Debtor's property, subject to Pine Tree's garnishment. Pine Tree also argues that under the provisions of each master lease, SRI/Debtor remains liable for the rental fees even in the event SRI/Debtor assigns its interest to a third party. It argues that these two factors make the garnishees' payments "funds" of SRI/Debtor and therefore subject to Pine Tree's garnishment. We cannot agree for the following reasons.
The test of a garnishee's liability to the judgment creditor is whether the garnishee has in his hands the principal debtor's property, funds, or credits, for the recovery of which the debtor has a present subsisting cause of action. Thomas v. Young, 71 So.2d 368 (1st Cir.1954).
Where the evidence on disclosure of the garnishee shows that the debt sought to be garnished was payable to a third person, and not to the defendant in the principal action, the disclosure itself is sufficient to protect the garnishee, and it devolves upon the plaintiff to bring in such a party, if he desires to test the validity of the claim. Airey & Stouse v. Hoke, 164 La. 998, 115 So. 60 (1927); First Financial Bank, FSB v. Boue, 541 So.2d 947 (5th Cir.1989). When the plaintiff in the garnishment contests the answer of the garnishee as false, the onus is on the plaintiff to prove the indebtedness as charged. First State Bank v. Burton, 222 La. 1030, 64 So.2d 421 (1953).
In their answers to the garnishment interrogatories, each garnishee denied having property of SRI/Debtor's. In each case, the garnishees answered that under the terms of their subleases, the monthly rental payments were due directly to the respective landlords, and not to SRI/Debtor. Upon review of each master lease and sublease, we see that the garnishees' representations regarding the payment terms of the master leases and subleases are correct. At this juncture, according to the jurisprudence, it devolves upon plaintiff Pine Tree to rule into court the landlords to test the validity of the garnishees' claims.
As we view the record on this appeal, there is no dispute as to basic facts, and the issues are based upon the documents and their legal effects.
We note the significance of the assignments of the master leases executed by SRI/Debtor in five of the franchise locations as outlined above. The distinction between an assignment and a sublease is that in an assignment, the original lessee transfers all his rights in the lease, whereas, in a sublease, he retains some control or interest in the *1275 lease. Broussard v. Hassie Hunt Trust, 231 La. 474, 91 So.2d 762 (La.1956); Bourgeois, Dupuis, Wright & Cohen v. Hayes, 457 So.2d 231 (3rd Cir.1984). Where there is an assignment of lease, under Louisiana Law, the assignee is liable to the original lessor for the obligations of the original lease which he has assumed completely. Mire v. Sunray DX Oil Company, 285 F.Supp. 885 (W.D.La. 1968). To assign a lease is to sell it. Mire, supra.
By assigning its interest in the five master leases, SRI/Debtor ceded all its rights and obligations to the assignees, including whatever rights it may have had to receive the franchisees' payments. By their agreement with SRI/Debtor, the assignees were required to pay their rental in each case to the landlord. This obligation cannot be changed unilaterally by SRI/Debtor. Therefore, we hold that the second part of the test in Thomas v. Young, supra: "for the recovery of which the debtor has a present subsisting cause of action" has not been met.
In only one location, the Elmwood Village outlet (garnishee Buras) does the record reflect that SRI/Debtor, as a tenant in a master lease, entered into a sublease with the garnishee and has not assigned its (SRI/Debtor's) interest in the master lease to a third party. However, even under the terms of the master lease and sublease, the sublessee (Buras) is obligated to pay the monthly rentals directly to the landlord, bypassing SRI/Debtor. Under the pertinent provisions, Buras owes his monthly rental payments directly to the landlord in the master lease and has never owed payments to SRI/Debtor. The same basic test applies to this situation.
Finally we point out that to agree with appellant's theory would create a situation where the garnishee would be required to pay two monthly rental payments: one in full to the judgment creditor to satisfy SRI/Debtor's debt and one in full to the landlord to satisfy its own rental obligation to remain in the premises. It is the duty of the courts to protect a garnishee against the possibility of double liability. First State Bank v. Burton, supra.
Accordingly, for the reasons assigned, we affirm the judgment of the trial court. All costs of this appeal are to be taxed against appellant.
JUDGMENT AFFIRMED.
NOTES
[1] Appellees are five groups of franchisees who hold eight franchise locations1) Guccione & Eppleytwo locations; 2) Gerald Martinezone location; 3) William & Olga Whitethree locations; 4) Ralph & Sylvia Burasone location; and 5) Ebbermanone location.
[2] SRI/Debtor is not a party to any of the Westowne leases/assignments.